## HUMPHRIES v. HOPKINS.
### No. 4839.

Court of Appeal of Louisiana. Second Circuit.

Dec. 5, 1934.

A. D. Flowers, of Jena, for appellant.

Vinson M. Mouser, of Columbia, for appellee.

DREW, Judge.

In this case the lower court rendered a written opinion which clearly states the issues and determines the facts. We have carefully studied the record and we cannot say that there is manifest error in the judgment of the lower court, and since the case is one of fact, we would not be justified in disturbing the judgment of the lower court.

The opinion of the lower court, with some parts thereof deleted, is as follows:

"This suit grows out of an automobile accident which occurred on the Lone Star Highway No. 165, the scene of the accident being south of the town of Kelly, in this parish, and directly in front of Mr. Franklin's house, and being upon a straight stretch of the highway and a distance of about 550 feet north of an abrupt curve in the road.

"It appears that Mr. Hopkins was proceeding north on the afternoon of the accident and when he cleared the curve he states that he saw a truck which was occupied by some E. R. A. workers proceeding slowly down the road on the right hand side. It appears that this road is perfectly straight at that point and, I might add, it is straight to the town of Kelly, a distance of perhaps half a mile. Mr. Hopkins was proceeding at a speed estimated at about 45 miles an hour. There is no evidence in the record to determine the exact speed of the car. The plaintiff's witnesses did not attempt to estimate the speed of the car and the defendant, Mr. Hopkins, stated that he usually drove about 45 miles an hour. He says that when he got some 30 or 40 feet behind the truck, he noticed Mr. Humphries make a step from the side of the truck, which it appears was then parked on the right hand side of the road and had come to a stop. He saw Mr. Humphries with a pick in his hand make a step from the left side of the truck as if to start across the road. He says that this was the first time he observed Mr. Humphries as separate from the other members of the crew who were sitting on the flat truck body; that as soon as he saw Mr. Humphries start from the side of the truck, he applied his brakes

and swerved his car toward the left of the highway in an attempt to avoid striking Mr. Humphries, but that Mr. Humphries made two steps and then a jump and that as he did that he struck Mr. Humphries with his car about the center of the radiator. He states that the car showed no evidence of the collision anywhere else, except about the middle of the radiator. He brought his car to a stop at the left hand side of the road and in the ditch as quickly as he could stop it.

"The evidence of the witnesses for the plaintiff fixed the distance at from 20 to 25 feet from where the skid marks first began to where the car finally stopped in the ditch. Mr. Hopkins, I believe, estimated that his car went about 60 feet from the time he first applied the brakes until the car went into the ditch. At any rate the evidence is all agreed on one point and that is, from the time the brakes were first applied, as indicated by the skid marks on the highway, the car made a gradual bend to the left of the road until it went into the ditch. The evidence of the plaintiff's witnesses, some two or three of them, was to the effect that the right hand skid marks of the Hopkins car passed by a foot and a half or two feet to the rear of the truck and angled across the road to the left.

"The plat or drawing filed in evidence by the plaintiff is incorrect and does not correspond to the testimony in the record, in that it shows that Hopkins' car was on the extreme right hand side of the road and swerved gently across the road to the left. The plat is not drawn according to scale, and the evidence does not show that Mr. Hopkins' car was in fact to the right of the center of the road at any time. Some of the witnesses testified that his right wheel was about the center of the road when the skid marks appeared. Hopkins says that he was proceeding along the left hand side of the road. I believe he states that his right wheels were near the center of the road when he first made a turn to go around the truck. Be that as it may, the fact is that every evidence shows that the car made the usual detour to the left as in passing a truck and that it proceeded and skidded in the direction of the left hand side of the road after the brakes were applied.

"The testimony of Mr. Hopkins and Mr. Keener Humphries is clear cut on the point as to what happened at the moment of the accident. Mr. Hopkins says definitely that Mr. Humphries left the truck and made two steps and then a jump, and his car then hit him. Keener Humphries says that when he saw the plaintiff in the act of leaving the side of the truck to cross the highway and he took his natural position and looked south on the highway—it will be noted that Mr. Keener Humphries was sitting on the rear of the truck and facing south; that when he turned south he saw the car of Hopkins proceeding 40 or 50 feet to the rear of the truck and that he hollered, 'Look out, Bert,' warning the plaintiff, and that when he looked back in the direction of Bert, the Hopkins car was between him and Bert and that he did not see Bert at the moment of the crash, because of the fact that the car was between him and Bert. He says positively that the car passed the rear of the truck some 5 or 6 feet. He also says that Bert must have been struck when he was a distance of some 7 or 8 feet from the side of the truck. This corroborates the testimony of defendant, and these two witnesses were in the best position to see what actually happened.

"The only theory on which the defendant could be held liable in this case, in view of the court, is that he sideswiped the truck or went so near to the parked truck as to recklessly endanger the lives of the men on the truck, or Mr. Humphries, who might have been standing directly by the side of the truck. If, as was intimated by the plaintiff, he was struck while he was in the act of reaching for the pick and while he was standing by the side of the truck, there would be no question in the mind of the court as to the liability of the defendant; but if, as the evidence convinces the court, Mr. Humphries was struck while he was several feet from the side of the truck and while he was crossing the highway in front of the approaching automobile, then, regardless of the fact as to any negligence on the part of the defendant, Mr. Humphries would be clearly barred from damages because of contributory negligence on his part.

"After considering all this testimony, the court is not convinced there was any negligence on the part of Mr. Hopkins. The evidence does not show that he was proceeding at a reckless rate of speed, and as one proof of this fact, the court is taking into consideration the fact that his automobile stopped in a comparatively short distance after the brakes were applied. The estimate has been placed all the way from 20 to 60 feet. Even if we take the last estimate of 60 feet, that fact is not convincing to the court that the automobile was being driven at a reckless rate of speed.

"Of course, it is a question that is wholly speculative as to how far a car would go

driven' at certain rates of speed. There is nothing very definite on which to draw a conclusion, but the court does not believe in this case there is any evidence of reckless driving.

"The court believes in this case that Mr. Humphries started across the road in front of a rapidly approaching vehicle, and without looking in either direction. He says that he looked up and down the road before he got off the truck. Mr. Humphries must have known that a car driving at the rate of 45 miles an hour would reach him in about eight seconds after it cleared the curve 550 feet south of him. He must have known that to undertake to cross that highway without being absolutely certain that he was not stepping in front of an automobile was gross and inexcusable negligence on his part. The accident is lamentable, but the obligation to use common, ordinary prudence in the interest of safety rests at all times not only upon the drivers of automobiles, but everyone else as well. This highway is one of the main travelled highways in the state of Louisiana, and at no time is it safe to attempt to cross it without knowing that he is stepping in front of an approaching automobile and to undertake to look up and down the highway before one gets off a truck, and then after one gets off a truck, reaching for a pick and taking that pick, turning and starting across the highway, without looking around, is gross and inexcusable negligence which bars recovery in this case. This was not a school bus or truck amenable to special laws; no children were playing on the highway who are in law excusable of negligence, but the men on this truck were laboring men in full possession of all of their faculties, and Mr. Hopkins had the right to expect common, ordinary prudence on behalf of everyone who might be on that truck. He had the right to contemplate that whoever might get off that truck would use ordinary prudence and diligence to ascertain whether or not a vehicle was about to pass the parked truck before undertaking to cross the highway in front of it.

"The court believes the accident occurred substantially as outlined by Mr. Hopkins and Mr. Keener Humphries, for the reason that the other witnesses who testified in this case did not see the car until it was in the act of striking plaintiff. Either their powers of observation were not as active as the two witnesses referred to or they were oblivious to their surroundings, for evidently they were not contemplating or thinking about an automobile accident.

"For the reasons above set out, the court denies liability to the plaintiff and rejects his demands.

"Wiley R. Jones, Judge."

We might further add that under Act No. 21 of 1932, § 3, rule 11 (d), pedestrians crossing highways outside the corporate limits of cities and towns shall yield the right of way to approaching vehicles. This act would seem to place a greater degree of care upon the pedestrian than on the driver of the motor vehicle, which is in direct conflict with the former jurisprudence of this state and the jurisprudence of every other state in the Union, which is that pedestrians and motor vehicles have equal rights upon the highways, but the driver of the motor vehicle owes a greater degree of care to the pedestrian than the pedestrian does to the motor vehicle, for the sound reason that the pedestrian cannot injure the motor vehicle, while the motor vehicle can injure the pedestrian.

The judgment of the lower court is affirmed, with costs.